ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| ANTONIO RAMOS CRUZ<br><br>Recurrente<br><br>v.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurrida | KLRA202300594 | *Revisión Administrativa* Procedente de la Junta de Libertad Bajo Palabra<br><br>Caso Núm. 147307<br><br><br>Sobre: Denegación de Privilegio de Libertad Bajo Palabra |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico a 14 de febrero de 2024.

Comparece el señor Antonio Ramos Cruz (señor Ramos Cruz o recurrente), quien nos solicita que revoquemos una *Resolución* emitida por la Junta de Libertad Bajo Palabra (JLBP, Junta o recurrida) el 26 de junio de 2023, notificada el 21 de julio de 2023. Mediante referida determinación, el foro administrativo denegó la solicitud de concesión del privilegio de libertad bajo palabra interpuesta por el recurrente.

Por los fundamentos expuestos a continuación, devolvemos el asunto a la Junta de Libertad Bajo Palabra para la celebración de una vista en o antes de marzo de 2024.

### I.

El señor Antonio Ramos Cruz se encuentra cumpliendo tres sentencias de 99 años, de forma consecutiva, por Asesinato en primer grado según fallo emitido el 24 de febrero de 1992 y

Número Identificador
SEN2024_____

sentencia dictada el 10 de abril de 1992.[1] Las referidas sentencias se cumplen tentativamente en el año 2159.[2]

El 17 de octubre de 2019 el señor Ramos Cruz presentó una petición de clemencia ejecutiva a la antes Gobernadora Wanda Vázquez Garced. El 12 de abril de 2023 se celebró la vista de consideración de libertad bajo palabra. A la audiencia, realizada por videoconferencia, compareció el técnico de servicios sociopenales, quien tuvo ante sí los expedientes, el representante legal del peticionario Lic. Julio Fontanet Maldonado, la Dra. Sheila Archilla Díaz, Catedrática del Departamento de Trabajo Social de la Universidad Interamericana, Recinto Metro y el Lcdo. Jorge L. Escribano Medina, como amigo consejero.

Tras ello, el 26 de junio de 2023, archivada el 7 de julio y recibida por la Institución Bayamón 501, el 1ro de agosto de 2023[3], la Junta emitió una Resolución en la que denegó concederle los beneficios del privilegio de Libertad Bajo Palabra al recurrente.[4]

Entre las determinaciones de hechos, la Junta indicó, en lo aquí pertinente lo siguiente:

> 3. El peticionario fue evaluado por la Sección de Programas Evaluación y Asesoramiento (SPEA) y cuenta con evaluación psicológica del 8 de diciembre de 2020, conforme al Reglamento 9232-2020 Sección 10.2 esta evaluación no está vigente. **Por la naturaleza de los delitos cometidos y por el tiempo transcurrido debe ser referido a una evaluación nueva por (SPEA).**
>
> [……..]
>
> 9. Se tomó en consideración la opinión de las víctimas.

---

[1] Apéndice págs. 15-17.
[2] Resolución, Apéndice pág. 1.
[3] Apéndice pág. 57.
[4] Apéndice págs. 1-5.

10. Se tomó en consideración la naturaleza y circunstancias de los delitos por los cuales cumple sentencia.

En las conclusiones de derecho la Junta expresó lo siguiente:

En el caso que nos ocupa, mencionamos aquellos factores que favorecieron al peticionario y otros que no, para la concesión del privilegio. Al momento de la evaluación del expediente, surge que la parte de epígrafe no cuenta con casos ante los tribunales, denuncias o querellas institucionales pendientes. Al peticionario le han realizado la prueba de ADN conforme al Artículo 8 de la Ley Núm. 175, supra. El peticionario fue evaluado por el Negociado de Rehabilitación y Tratamiento y cuenta con evaluación psicológica el 8 de diciembre de 2020, conforme al Reglamento 9232-2020 Sección 10.2 dicha evaluación **no está vigente**. **Por la naturaleza de los delitos cometidos y por el tiempo transcurrido debe ser referido a una evaluación nueva por (SPEA).** Según el Informe de Libertad Bajo Palabra de este caso realizado el 7 de marzo de 2023 el peticionario presenta en su plan de salida candidato para fungir como amigo consejero, oferta de trabajo y vivienda para pernoctar viables. Actualmente el peticionario se encuentra en nivel de custodia de mínima seguridad desde el 16 de octubre de 2006. El peticionario culminó las terapias Control de Impulsos en octubre de 2009 y la tomó por segunda ocasión finalizándola el 25 de septiembre de 2019, además se encuentra laborando en la Institución Penal donde está ingresado en el área de la comisaria empacando alimentos y repartiéndolos en las instituciones penales. Actualmente se encuentra tomando pases familiares desde la institución penal donde se encuentra ingresado a la residencia de sus familiares desde el 2016. Tomando en consideración todos los factores del presente caso, consideramos que el peticionario no cualifica para beneficiarse del privilegio de libertad bajo palabra.
[…]

ORDEN

Se dispone no conceder el privilegio de libertad bajo palabra a ANTONIO RAMOS CRUZ. Este caso volverá a ser considerado para el mes de marzo de 2024, fecha en la cual el DCR deberá someter un Informe de ajuste y progreso con el plan de salida debidamente corroborado y un informe actualizado de Sección de Programas de Evaluación y Asesoramiento (SPEA). (Énfasis suplido).[5]

---

[5] Apéndice pág. 54.

Insatisfecho con la decisión, el 14 de agosto de 2023 Ramos Cruz, por derecho propio, suscribió un escrito de *Reconsideración*. Adujo que no estaba de acuerdo con la determinación de hechos número tres (3) respecto a la vigencia de la evaluación sicológica. Explicó que estos informes tienen una vigencia de tres (3) años desde la fecha de evaluación, a tenor con la sección 10.2 del Reglamento 9232-2020. Agregó que, aunque la evaluación es la vigente, el TSS Dereck Vázquez gestionó una evaluación para la semana del 14 al 18 de agosto de 2023. Sobre este particular, solicitó que se tomara conocimiento oficial y se realizara una vista de consideración para que se enmiende la orden. También informó que hacía siete años y medio tenía pases familiares y estuvo en la libre comunidad dos (2) años bajo fianza con grillete (2017-2018).[6]

El 17 de agosto de 2023 el señor Ramos Cruz, a través del proyecto Inocencia de la Facultad de Derecho de la Universidad Interamericana de Puerto Rico, solicitó reconsideración. En este escrito adoptó y acogió la reconsideración previamente incoada por derecho propio.

El 28 de agosto de 2023 la Junta de Libertad acogió la Moción de Reconsideración y el 17 de octubre, archivada en autos y notificada el 18 de octubre de 2023, dictó una Resolución. En esta reiteró denegar la libertad bajo palabra y formuló las siguientes determinaciones de hecho:

> 1. El peticionario cumple una sentencia consolidada de noventa y nueve (99) años por los delitos de asesinato en primer grado (fres casos), de los cuales ha cumplido aproximadamente treinta y un (31) años, cinco (5) meses y cuatro (4) días.

---

[6] Apéndice, págs. 45-57.

2.      El peticionario comenzó a cumplir su sentencia el 10 de abril de 1992, y extingue la totalidad de su sentencia aproximadamente el 20 de diciembre de 2153.

3.      La Junta adquirió jurisdicción sobre el presente Caso el 4 de agosto de 2016, luego de que le fuera aplicada la Ley Núm. 85-2022 la cual redujo el mínimo de su sentencia.

4.      Al momento de la evaluación del expediente, surge que el peticionario no cuenta con casos ante los tribunales, denuncias o querellas institucionales pendientes.

5.      Al peticionario le han realizado la prueba de ADN conforme establece el Artículo 8 de la Ley Núm. 175 de 24 de julio de 1998, según enmendada el 22 de diciembre de 2004.

6.      El peticionario completó el Programa de Tratamiento Psico-Educativo Aprendiendo a Vivir Sin Violencia el 17 de enero de 2006.

7.      El peticionario fue evaluado por la Sección de Programas Evaluación y Asesoramiento (SPEA) y cuenta con evaluación psicológica del 8 de diciembre de 2020. El 15 de agosto de 2023 fue evaluado psicológicamente nuevamente por SPEA. Se rindió Informe de Evaluación Psicológica el cual fue recibido en la Junta el 28 de agosto de 2023.

8.      Según surge del Informe de Libertad Bajo Palabra realizado el 7 de marzo de 2023, el peticionario presentó un plan de salida viable en sus tres áreas, entiéndase, vivienda, amigo consejero, y oferta de empleo.

9.      El peticionario se encuentra en nivel de custodia de mínima desde el 16 de octubre de 2006.

10.     El peticionario culminó las terapias de Control de Impulsos en octubre 2009. Dichas terapias fueron tomadas por segunda ocasión en septiembre de 2019.

11.     Actualmente, el peticionario se encuentra laborando en la comisaria empacando alimentos y repartiéndolos en las instituciones penales.

12.   El peticionario no muestra arrepentimiento, ni acepta la comisión de los delitos, pues aduce que es inocente.

13.   El peticionario se encuentra beneficiándose de pases desde la institución penal donde se encuentra ingresado a la residencia de sus familiares desde el 2016. En pruebas toxicológicas realizadas cuando regresa del beneficio de pases ha obtenido resultados negativos al uso de narcóticos.

14.   Para efectos de un análisis de la totalidad del expediente, se evaluó la opinión de las víctimas, así como, la naturaleza y circunstancias de los delitos por los cuales cumple sentencia el peticionario.

Tras exponer los hechos y el derecho, la Junta mencionó que, "el peticionario fue evaluado psicológicamente por SPEA en dos ocasiones, la última se llevó a cabo el 15 de agosto de 2023. De dicha evaluación se desprende que el peticionario cuenta con ciertos aspectos de su personalidad que pudieran interferir con su funcionamiento global lo que podría dificultar su toma de decisiones." Agregó que, "[a]l momento de evaluar al peticionario para el privilegio se recomendó: atender indicadores emocionales y factores de riesgo; evaluar al participante para los programas que cualifique dentro del Sistema de corrección y ejercer una supervisión intensa y rigurosa de parte del técnico sociopenal con relación al ajuste institucional". Tras ello, la Junta denegó la solicitud de Reconsideración.

Inconforme con la decisión, el 17 de noviembre de 2023, el señor Ramos Cruz presentó un recurso de revisión ante nos. En este, alegó que incidió la Junta de Libertad Bajo Palabra al:

**Primero:** Denegar la libertad bajo palabra al Recurrente al amparo de una interpretación errónea de su propio Reglamento.

**Segundo:** Al sustentar su determinación de denegar la solicitud de reconsideración basada en evidencia accedida con posterioridad a la moción de

reconsideración y no presentada en la vista de consideración durante la cual desfiló la totalidad de la prueba pertinente y admisible en dicho proceso.

Recibido el Recurso de Revisión, le concedimos término al recurrido para presentar su posición y así lo hizo. Evaluado el expediente y con el beneficio de ambas comparecencias, disponemos.

## II.

## A.

La función revisora de este foro apelativo con respecto a las determinaciones del Departamento de Corrección, como de cualquier otra agencia, es de carácter limitado. Pérez López v. Depto. Corrección, 208 DPR 656 (2022). Sus decisiones merecen nuestra mayor deferencia judicial, sobre todo, cuando es la agencia quien tiene la especialización necesaria para atender situaciones particulares sobre las cuales la ley le confiere jurisdicción. Pérez López v. Depto. Corrección, *supra*; Álamo Romero v. Adm. de Corrección, 175 DPR 314 (2009).

Así pues, los tribunales le deben dar gran peso o deferencia a las aplicaciones e interpretaciones de las agencias con respecto a las leyes y los reglamentos que administran, por lo que no pueden descartar libremente sus conclusiones e interpretaciones de derecho. Cruz Negrón v. Adm. de Corrección, 164 DPR 341, 357 (2005). Una vez se ha adoptado una norma, la agencia administrativa debe cumplirla y aplicarla en la manera en que está concebida, sirviendo siempre a los propósitos, los objetivos y la política pública que la forjaron. Benítez Nieves v. ELA et al., 202 DPR 818 (2019); Torres v. Junta Ingenieros, 161 DPR 696, 712 (2004). Así pues, las agencias administrativas están obligadas a observar estrictamente las reglas que ellas mismas promulgan.

*Íd.* Tampoco pueden actuar arbitraria o caprichosamente al aplicar sus reglamentos a casos particulares. *Íd*.

Asimismo, se ha reiterado que el estándar de revisión judicial en materia de decisiones administrativas se circunscribe a determinar si existe una base racional respaldada por evidencia sustancial que sostenga la decisión o interpretación impugnada. Ley de Procedimiento Administrativo Uniforme, Sección 4.5, 3 LPRA sec. 9675; Rebollo v. Yiyi Motors, 161 DPR 69 (2004); Otero v. Toyota, 163 DPR 716 (2005). El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. Camacho Torres v. AAFET; 168 DPR 66 (2006); Pro-Mej., Inc. v. Jta. De Planificación, 147 DPR 750, 761 (1999).

Ahora bien, la norma no es absoluta, ni impide a los tribunales revisar determinaciones administrativas que no estén basadas en evidencia sustancial, cuando el organismo erró en aplicar la ley o cuando la actuación de la agencia haya sido arbitraria, irrazonable o contraria a derecho. Moreno Lorenzo y otros v. Depto. Fam., *supra*; The Sembler Co. v. Mun. De Carolina, *supra*, pág. 882; Otero v. Toyota, *supra*, pág. 729. También cuando su actuación constituya un abuso de discreción. Calderón Otero v. C.F.S.E., *supra*; JP Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177 (2009); Murphy Bernabe v. Tribunal Superior, 103 DPR 692, 699 (1975).

**B.**

La Constitución de Puerto Rico, en la Sección 19 del Artículo VI, establece como política pública que el Estado habrá de: "...reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos

disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. P.R., LPRA, Tomo 1.

En este contexto la Ley Núm. 118 de 22 de julio de 1974, según enmendada, 4 LPRA sec. 1501, *et seq*. creó la Junta de Libertad Bajo Palabra, adscrita al Departamento de Corrección y Rehabilitación. Entre los poderes conferidos a la Junta está el decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico. La Ley establece que, la libertad bajo palabra será decretada para el mejor interés de la sociedad y cuando las circunstancias presentes permitan a la Junta creer, con razonable certeza que tal medida habrá de ayudar a la rehabilitación del delincuente. Para determinar si concede o no la libertad bajo palabra, la Junta tendrá ante sí toda la información posible sobre el historial social, médico, ocupacional y delictivo de cada confinado, incluyendo la actitud de la comunidad respecto a la liberación condicional del sujeto, y una evaluación que deberá someter la Administración de Corrección. Artículo 3 (a), 4 LPRA sec. 1503.

De esta forma, este organismo tiene la autoridad de conceder a cualquier persona recluida en una institución correccional de Puerto Rico el privilegio de cumplir la última parte de su condena en libertad bajo palabra. Benítez Nieves v. ELA et al., 202 DPR 818 (2019). Al conceder el privilegio, la Junta puede imponer las condiciones que estime necesarias. Art. 3, Ley Núm. 118, supra, 4 LPRA sec. 1503. Así, el liberado bajo palabra tiene una libertad cualificada. Benítez Nieves v. ELA et al., *supra*; Maldonado Elías v. González Rivera, 118 DPR 260, 266 (1987).

El Artículo 3-D de la Ley Núm. 118, establece los siguientes criterios que la Junta de Libertad Bajo Palabra los considere al momento de analizar el privilegio de libertad bajo palabra:

(1) La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.
(2) Las veces que el confinado haya sido convicto y sentenciado.
(3) Una relación de liquidación de la sentencia o sentencias que cumple el confinado.
(4) La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.
(5) El de ajuste institucional y del social y psicológico del confinado, preparado por la Administración de Corrección y el médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.
(6) La edad del confinado.
(7) El o los tratamientos para condiciones de salud que reciba el confinado.
(8) La opinión de la víctima.
(9) Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.
(10) Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.
(11) Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento.

La Junta tendrá la discreción para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho.

El legislador hizo constar en el Artículo 5 de la Ley Núm. 118, *supra*, que la Junta tiene la autoridad de promulgar las reglas y reglamentos que crea convenientes para el mejor cumplimiento de las disposiciones de ese artículo. Benítez Nieves v. ELA et al., *supra.* En virtud de ello, el 18 de noviembre de 2020 la agencia aprobó el Reglamento de la Junta de Libertad Bajo Palabra, Reglamento Núm. 9232.

El Artículo X, Sección 10.1 del Reglamento 9232, establece los Criterios para Elegibilidad, a saber:

A. La Junta evaluará las solicitudes del privilegio, caso a caso, conforme al grado de rehabilitación y ajuste que presente el peticionario durante el término que ha estado en reclusión.

Al analizar los casos, la Junta tomará en consideración ciertos criterios con relación al peticionario, entre los cuales se encuentran los siguientes:

El historial delictivo, la clasificación de custodia, el tiempo que lleva en dicha clasificación y si hubo cambio de clasificación y las razones para ello; la edad del peticionario; la opinión de la víctima; el historial social, el cumplimiento y ajustes Institucionales; si se le han impuesto medidas disciplinarias; el historial de trabajo y/o estudio realizado en la institución; si cuenta con un plan de salida estructurado y viable en las áreas de oferta de empleo y/o estudio, residencia, historial de salud con informes emitidos por cualquier profesional de la salud mental, y amigo consejero. Véase Sección 10.1 (B) 1-11.

La Junta tendrá discreción para considerar los mencionados criterios según considere conveniente y cualquier otro meritorio con relación a la rehabilitación del peticionario y al mejor interés de la sociedad. Sección 10.1 (B) 12.

La Sección 10.2 del Reglamento 9232 menciona los documentos requeridos, que incluye:

A. El Departamento de Corrección y Rehabilitación, a través de sus funcionarios, empleados y/o representantes autorizados, proveerá a la Junta todo documento que contenga información relacionada a los criterios antes esbozados. **La producción de estos documentos se hará para la fecha de la vista de consideración o a la fecha en que se vuelva a reconsiderar el caso**. En cumplimiento con lo anterior, el Departamento de Corrección y Rehabilitación, remitirá a la Junta los siguientes documentos:

[……..]

12. Evaluación médica, psicológica y/o psiquiátrica

a. La Junta podrá requerir la evaluación médica, psicológica o psiquiátrica del Negociado de Rehabilitación y Tratamiento o de Salud Correccional, o entidad análoga debidamente acreditada por el Estado, en aquellos casos en que la persona se encuentre cumpliendo sentencia por delitos contra la

vida y/o delitos sexuales, conforme al estado de derecho vigente a la fecha en que fue sentenciado, o en cualquier otro caso en que la Junta lo considere necesario.

**b. Estos informes tendrán una vigencia de tres (3) años desde la fecha de la evaluación.**

**c. La Junta en su discreción podrá requerir otra evaluación, aunque tenga una vigente.** (Énfasis nuestro)

**C.**

Aun cuando la decisión de conceder o denegar los beneficios de libertad bajo palabra descansa en la entera discreción del Estado, y no existe un derecho a obtener tales beneficios, el procedimiento para su concesión debe cumplir con ciertas salvaguardas procesales. Maldonado Elías v. González Rivera, *supra*, págs. 275-276. A tales efectos se deben publicar y tener disponibles a los confinados las guías o los criterios que se utilizan para conceder la libertad; **debe existir algún tipo de vista o evaluación de la solicitud**; de ordinario, el confinado debe tener acceso a la información que utiliza el organismo gubernamental para efectuar su decisión, y se le debe informar por escrito las razones por las cuales se le niega la libertad. Íd. pág. 276. (Citas omitidas) (Énfasis nuestro).

En esa línea, el Artículo 3-E de la Ley 118, sobre Notificación de la vista a la víctima de delito, presupone la celebración de una vista en la cual se considere la concesión, modificación, reconsideración, seguimiento e investigación del privilegio de libertad bajo palabra. 4 LPRA sec. 1503e.

De igual forma, el Artículo 3-F de la Ley 118 atiende los Procedimientos relacionados con la vista, a saber:

Las vistas de modificación, reconsideración, seguimiento e investigación o revocación de libertad bajo palabra serán grabadas y públicas, pero la Junta podrá limitar el número de deponentes por razones de

seguridad. No obstante, se podrá optar por mantener dichas vistas cerradas al público con el fin de poder recibir información o testimonio oral relevante que provenga del propio liberando o de la víctima, cuando éstos así lo soliciten. [……..] 4 LPRA sec. 1503f.

A esos fines, el Artículo XI (C) (2) del Reglamento 9232 establece el procedimiento de vistas ante la Junta, en la cual el funcionario que presida los procesos estará facultado para, entre otras, "ofrecer a todas las partes la oportunidad de responder, presentar evidencia y argumentar, conducir **contrainterrogatorio** y someter evidencia en refutación". Agrega el Artículo XI (I) que durante la vista se le garantizará al peticionario o liberado los siguientes derechos:

1. Derecho a comparecer por derecho propio o mediante representación legal. […]
2. Derecho a presentar evidencia a su favor.
3. Derecho a una adjudicación imparcial.
4. Derecho a que la decisión sea basada en el expediente.

Por otro lado, el Capítulo 12 del Reglamento recopila el trámite para las vistas de consideración y reconsideración:

Sección 12.1 - Vista de Consideración

A.    La vista de consideración se celebra en aquellos casos que se presentan ante la consideración de la Junta por primera vez.

B.    Disposiciones Generales

1.    La vista de consideración se regirá por lo dispuesto en el **Artículo XI** de este Reglamento.
2.    Las vistas de consideración se podrán celebrar mediante la comparecencia personal de las partes a la sede de la Junta, o desde las instituciones correccionales y/o la oficina del Programa de  Comunidad correspondiente mediante el sistema de videoconferencia o cualquier otro sistema electrónico o computadorizado para esos fines.
3.    En las vistas de consideración, el orden de la **prueba comenzará con el peticionario**.

C.    Términos para celebrarla:

1.    La vista de consideración se celebrará en fecha tan cercana como sea posible a la fecha de expiración del mínimo de sentencia, y

siempre dentro del término de cuarenta y cinco (45) días calendario, contados a partir de la fecha en que el Peticionario cumplió con el término mínimo de reclusión requerido para que la Junta adquiera jurisdicción. Este término podrá ser ampliado por circunstancias excepcionales o atribuibles al peticionario o que estén bajo su control.

2.    En el ejercicio de su discreción, mediante acuerdo adoptado por mayoría, la Junta podrá considerar un caso fuera del término establecido en el inciso anterior, cuando el mismo presente circunstancias especiales que justifiquen su inmediata consideración.

D.   Notificación de la citación

1. La citación al peticionario se notificará por escrito, incluyendo en su contenido los criterios a ser considerados por la Junta al evaluar el caso para libertad bajo palabra, en el término de veinte (20) días calendario de anticipación a la fecha del señalamiento.

2. La notificación se hará conforme lo dispuesto en el Artículo XI (H) de este Reglamento.

Sección 12.2 - Reconsideración de casos

A. **La reconsideración dispuesta en esta sección se refiere a aquellos casos en que se ha denegado la libertad bajo palabra y que la Junta dispuso que volverá a considerar dentro de un (1) año desde la fecha en que consideró el caso por última vez**. La Junta podrá volver a considerar un caso fuera del término antes dispuesto, por causa meritoria.

B. Al volver a considerar un caso, la Junta cumplirá con la notificación a víctimas conforme lo dispuesto en la Sección 8.3 de este Reglamento.

C. La reconsideración de los casos se realizará sin la celebración de una vista a esos fines. A discreción de la Junta, podrá celebrarse una vista, previa solicitud escrita a esos efectos presentada por el peticionario con cuatro (4) meses de antelación a la fecha en que la Junta volverá a considerar su caso. Las vistas de reconsideración se regirán por lo dispuesto en el Artículo XI de este Reglamento.

En esencia, vemos que en este trámite administrativo los ciudadanos gozan de las garantías mínimas del debido proceso de ley.   Así, pues se ha reconocido que las garantías de un debido

proceso de ley han sido extendidas a las agencias. PVH Motor. v. ASG, 209 DPR 122 (2022); Báez Díaz v. ELA, 179 DPR 605, 623 (2010).

La dimensión procesal del debido proceso de ley en el contexto adjudicativo exige como mínimo: (1) la notificación adecuada del proceso; (2) el proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) el tener asistencia de un abogado, y (6) que la decisión se base en el expediente. PVH Motor. v. ASG, *supra*; Vázquez González v. Mun. San Juan, 178 DPR 636, 643 (2010); Garriga Villanueva v. Mun. San Juan, 176 DPR 182, 197 (2009).  Estas salvaguardas constitucionales se encuentran, de igual forma, reconocidas en la Sección 3.1 de la Ley Núm. 38-2017, 3 LPRA sec. 9641. PVH Motor. v. ASG, *supra.*

Vulnera los principios elementales del debido proceso de ley cuando la agencia considera ex parte prueba desconocida para las partes que no pudieron refutar. Véase, López y otros v. Asoc. de Taxis de Cayey, 142 DPR 109, 115 (1996).  En esa línea el Tribunal Supremo afirmó que, "[el] derecho a una vista pública no tendría sentido alguno si se permitiera [al organismo administrativo] fundar su decisión en evidencia recibida sin el conocimiento de las partes, fuera de la audiencia, sin dar a las partes interesadas la oportunidad de rebatirla o explicarla mediante la repregunta o la presentación de otra evidencia en contrario." López y otros v. Asoc. de Taxis de Cayey, *supra*; López v. Junta de Planificación, 80 DPR 646, 670 (1958).

A la luz de la antes mencionada normativa, disponemos.

**III.**

En el primer señalamiento de error el recurrente alega que el único planteamiento de la Junta que no le favoreció consistió en que la evaluación psicológica de 8 de diciembre de 2020 no estaba vigente.  Explicó que la Sección 10.2(A)(12) del Reglamento 9232 establece que esos informes tendrán una vigencia de tres (3) años.  Por ello, asevera que, a la fecha de la vista de consideración de libertad bajo palabra, celebrada el 12 de abril de 2023, el informe estaba vigente y no existía razón para excluirlo.  Indicó que no había nada en el expediente que justificara no conceder el privilegio solicitado.  Evaluamos.

Para conceder la libertad bajo palabra la Junta evalúa ciertos criterios, entre ellos: la opinión de las víctimas, la naturaleza y circunstancias de los delitos.[7]  . En este caso, la Junta aludió a esos criterios y, además, que no contaba con una evaluación sicológica vigente.  Con ello, denegó la concesión del privilegio.

En torno a la vigencia de la evaluación sicológica, la Sección 10.2 (A)12, incisos b y c del Reglamento 9232, establece que los informes sobre la evaluación médica, psicológica y/o psiquiátrica tendrán una vigencia de tres (3) años desde la fecha de la evaluación.  En nuestro caso, vemos que la Junta descartó el informe que se le realizó al recurrente el 8 de diciembre de 2020, por presuntamente no estar en vigor.  No obstante, a la fecha de la vista, hasta el 8 de diciembre de 2023, el informe estaba en pleno vigor.  Por tanto, no debió descartarse bajo el fundamento de que no era el vigente.

Ahora bien, la Sección 10.2 del Reglamento 9232 le concede discreción a la Junta para requerir otra evaluación, aunque tenga

---

[7] Véase Artículo 3-D de la Ley Núm. 118 y la Sección 10.1 (B) del Reglamento Núm. 9232.

una vigente. En esas circunstancias, la Junta podía solicitar una evaluación más reciente para su oportuna consideración. Así lo hizo al determinar que "[p]or la naturaleza de los delitos cometidos y por el tiempo transcurrido debe ser referido a una evaluación nueva por (SPEA)." Así que, esta decisión es adecuada a la luz de los hechos y la reglamentación aplicable.

En el segundo señalamiento de error, el recurrente alude que la agencia, al denegar la reconsideración de su dictamen, utilizó un nuevo informe de evaluación psicológica del 16 de agosto de 2023, a pesar de que la vista se había celebrado el 12 de abril de 2023. Ante ello, sostiene que la Junta estaba impedida de evaluar la evidencia presentada o ubicada en el expediente con posterioridad a la fecha de la vista, lo que constituye una violación a su derecho a confrontar la prueba que emana del debido proceso de ley.

Sobre este particular la Junta alega, en síntesis, que durante la vista de consideración no se confronta a las partes, ya que es un procedimiento adjudicativo informal. Indicó que a la fecha en que se evaluó la petición de reconsideración ya obraba en el expediente administrativo la nueva evaluación, la cual consideró. Validó esa actuación al expresar que en el proceso de tomar una determinación sobre la concesión o no del privilegio, la Junta evalúa posteriormente la totalidad del expediente administrativo, junto al Informe del Oficial Examinador. Todo ello a base del estándar de preponderancia de la prueba. Revisamos.

Una de las razones por la cual la Junta inicialmente denegó la libertad bajo palabra al señor Ramos Cruz fue por no contar con una evaluación sicológica vigente. Aun cuando la evaluación si era la vigente, según explicamos en el primer señalamiento de

error, ese informe no fue considerado y la Junta recomendó una nueva evaluación. El recurrente solicitó reconsideración.

Bajo ese escenario, el 16 de agosto de 2023 la Sección de Programas Evaluación y Asesoramiento (SPEA) emitió un nuevo informe. En la reconsideración del dictamen inicial, la Junta evaluó el documento y denegó la solicitud de reconsideración. Debemos aclarar que la etapa en que ocurren estos eventos es en la revisión del procedimiento de consideración y no en el trámite de reconsideración que ocurre al año de haberse denegado la libertad bajo palabra.

Así que, en el proceso de reconsideración de la Resolución original, la Junta no debió recibir y evaluar documentos que no estaban en el expediente cuando se celebró vista inicial de consideración. En ese trámite se debe cumplir con el proceso establecido en el Artículo XI (c) (2) del Reglamento 9232 que requiere ofrecer a todas las partes la oportunidad de responder, presentar evidencia y argumentar, conducir contrainterrogatorio y someter evidencia en refutación. Este trámite fue alterado cuando la Junta consideró prueba obtenida luego de la vista.

No obstante, ante el hecho de que se realizó una nueva evaluación sicológica, mientras el caso era atendido en reconsideración, lo adecuado, conveniente y razonable era que se remitiera nuevamente el asunto a la Junta para una nueva vista de consideración. Ello es así porque ese informe había sido descartado inicialmente y ahora está disponible la versión actualizada.

Como la Junta utilizó un informe obtenido luego de celebrada la vista de consideración, a los fines de reevaluar su

dictamen, procede devolver el asunto a la agencia para la celebración de una nueva vista, lo antes posible.

**IV.**

Por las razones antes expresadas dejamos sin efecto la Resolución emitida por la Junta de Libertad Bajo Palabra, contra la cual aquí se recurre. Remitimos el asunto nuevamente a la Junta para que señale una nueva vista no más tarde del último día del mes de marzo próximo. En esta debe evaluar nuevamente al recurrente de forma integral a base del nuevo informe sicológico y/o alguna otra prueba obtenida con posterioridad a la vista 12 de abril de 2023.

Notifíquese a las partes y al miembro de la población correccional en cualquier institución donde este se encuentre.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones