| | | |
|---|---|---|
| | Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL X | |
| Hilda Irene Machado Martínez<br><br>Recurrente<br><br>v.<br><br>SUNRUN PR Operations, LLC; Freedom Forever Puerto Rico, LLC; Corporation Service Company P.R., Inc. y Otros.<br><br>Recurridos | TA2025RA00419 | *Revisión Administrativa procedente del Departamentos de Asuntos del Consumidor*<br><br>Caso Núm.: ARE-2025-0007164<br><br>Sobre: Departamento de Asuntos del Consumidor |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Jueza Lotti Rodríguez

*Grana Martínez, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de febrero de 2026.

Comparece ante nos Hilda Irene Machado Martínez (en adelante la "Recurrente") mediante un Recurso de Revisión Judicial instado el 23 de diciembre de 2025. En su recurso, nos solicita que revoquemos la Resolución Sumaria emitida por el Departamento de Asuntos del Consumidor (en adelante "DACo") el 4 de noviembre de 2025.

Por los fundamentos que expondremos a continuación se revoca la Resolución Sumaria emitida por el DACo.

**I.**

El 12 de junio de 2025, la Recurrente presentó una Querella en el DACo en contra de Sunrun PR Operations LLC y Freedom Forever (en adelante, los "Recurridos").[1] Según se desprende de la Querella las alegaciones principales giran en torno a que hubo un cobro de depósito directo indebido por la cantidad de $127.00.[2]

---

[1] Véase Ent. Sum. TA. Núm. 6. Apéndice Núm. 2.
[2] *Íd.*

Además, le habían ofrecido a la Recurrente la cantidad de diez (10) placas solares. No obstante, solo fueron instaladas ochos (8) placas.[3] Por último, mediante la contratación de un perito electricista se verificó el sistema instalado y éste no cubría la cantidad de energía que requería la casa.[4]

El 5 de septiembre de 2025, los recurridos presentaron su Contestación a la Querella en la cual negaron las alegaciones de la Querella.[5] Entre las defensas afirmativas presentadas se limitaron a exponer que había falta de jurisdicción, que existía una cláusula de resolución de disputas y arbitrajes, falta de parte indispensable, que la Querella no contenía una reclamación que justificara la concesión de un remedio, y la doctrina de actos propios, entre otras.[6]

El 4 de septiembre de 2025, la Lcda. González, y la Lcda. Curbelo presentaron una Moción Asumiendo Representación Legal, radicada el 4 de septiembre de 2025. El 18 de septiembre de 2025, la Recurrente presentó una Moción solicitando enmendar la Querella.[7] La cual fue recibida el 18 de septiembre de 2025 en el DACo.[8]

Luego, el 9 de octubre de 2025, se instó una Moción Solicitando Relevo de Representación Legal de la Lcda. Curbelo.[9] La cual fue recibida el 9 de octubre de 2025, en el DACo. [10]

Ninguna de las Mociones antes mencionadas fue atendida por la agencia administrativa.

El 7 de noviembre de 2025, el DACo emitió una Resolución Sumaria en la cual desestimó la Querella y ordenó el cierre y archivo de ésta.[11] En este escrito se expuso que:

---

[3] *Íd.*
[4] *Íd.*
[5] Véase Ent. Sum. TA. Núm. 6. Apéndice Núm. 3.
[6] *Íd.*
[7] Véase Ent. Sum. TA. Núm. 1 Anejo Núm 3 titulado "Moción".
[8] *Íd.*
[9] Véase Ent. Sum. TA. Núm. 1 Anejo Núm. 4 titulado "Moción".
[10] *Íd.*
[11] Véase Ent. Sum. TA. Núm. 6. Apéndice Núm. 4.

[E]l contrato para adquirir dicho sistema por el cual se radicó la querella fue firmado con otra entidad distinta a los querellados. De los documentos que obran en el expediente se desprende que el contrato firmado por la querellante corresponde a una transacción entre esta y un tercero (Sunrun, Inc.) En el presente caso no existe la relación consumidor – comerciante entre la querellante y Sunrun PR Operations LLC. No se efectuó entre éstos una relación contractual.

El 1 de diciembre de 2025, la Recurrente presentó una Moción de Reconsideración en el DACo.[12] Dicha moción no fue contestada por la agencia. Cabe añadir que la Recurrida no les notificó la Moción de Reconsideración a los Recurrentes dentro del término de cumplimiento estricto establecido por el Reglamento del DACo.[13] Del expediente surge que la notificación se llevó a cabo el 2 de diciembre de 2025 vía correo electrónico.

Habiendo transcurrido el término de quince (15) días en la cual la Agencia no acogió la Reconsideración, según lo establecido en la sección 3.15 de Ley de Procedimiento Administrativo Uniforme, 3 LPRA sec. 9655 (en adelante, la "LPAU"), se acudió al Tribunal de Apelaciones.

El 23 de diciembre de 2025, la Recurrente presentó ante este foro apelativo un Recurso de Revisión Judicial. En dicho escrito se estableció que se cometieron los siguientes errores:

> ERROR PRIMERO: Erró el DACO al emitir una Resolución Sumaria sin adjudicar previamente las mociones relacionadas con la representación legal, violando el debido proceso de ley de la querellante.

> ERROR SEGUNDO: Erró el DACO al privar a la parte querellante de su derecho a participar del procedimiento administrativo antes de emitir una determinación final.

> ERROR TERCERO: Erró el DACO al dar validez a una cláusula de arbitraje contenida en un contrato electrónico que no cumple con los requisitos de E-SIGN, UETA ni la Ley Núm. 148 – 2006.

> ERROR CUARTO: Erró el DACO al no considerar que el contrato alegado es uno de adhesión que excluye la

---

[12] Véase Ent. Sum. TA. Núm. 6. Apéndice Núm. 5.

[13] *Íd.*

jurisdicción de una agencia reglamentadora, en contravención con el Artículo 1249 del Código Civil.

## II.

### A. Debido Proceso de Ley.

El Art. II sec. 7 de la Constitución de Puerto Rico establece que "[n]inguna persona será privada de su libertad o propiedad sin [un] debido proceso de ley". Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1, ed. 2016, pág. 301. El debido proceso de ley también se ha extendido a las garantías que tienen que brindar las agencias administrativas. *Almonte et al v. Brito*, 156 DPR 475, 482 (2002); *Lopez y otros v. Asoc. De Taxis de Cayey*, 142 DPR 109, 114 (1996).

El debido proceso de ley tiene dos (2) vertientes diferentes: la sustantiva y la procesal. *Rivera Rodríguez & Co v. Stowell Taylor*, 133 DPR 881, 888 (1993). En su modalidad sustantiva el Tribunal interpreta la ley a la luz de las disposiciones constitucionales con el fin de proteger los derechos constitucionales fundamentales. *Id.* En lo que respecta a la modalidad procesal "la cláusula del debido proceso instituye las garantías procesales mínimas que el Estado debe proveerle a un individuo al afectarle su propiedad o libertad". *Picorelli López v. Depto. de Hacienda*, 179 DPR 720, 736 (2010).

El Tribunal Supremo en *López Vives v. Policía de PR*, 118 DPR 219, 231 (1987) expuso que el debido proceso de ley no constituye un molde rígido que limite la actuación de los organismos administrativos; sin embargo, *exige un proceso justo y equitativo*. (Énfasis suplido)

Para cumplir con los postulados mínimos que exige el debido proceso de ley en su vertiente procesal la doctrina jurisprudencial ha establecido los siguientes criterios: "(1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar evidencia

presentada en su contra; (5) tener asistencia de abogado y (6) que la decisión se base en el récord". *Katiria's Café, v. Mun. de San Juan,* 2025 TSPR 33, 215 DPR__; *Landrau Cabezudo v. Puertos et al,* 2025 TSPR 7, 215 DPR__.

Asimismo, el Tribunal Supremo de los Estados Unidos ha reiterado *desde el siglo diecinueve (19) que el derecho a ser escuchado ya sea en el tribunal o en una agencia administrativa es un principio primordial del debido proceso de ley. Windsor v. Mcveigh,* 93 US 274 (1876) citado en *Landrau Cabezudo v. Puertos et al,* supra. (Énfasis suplido).

### B. Resolución Sumaria

La LPAU permite a las agencias gubernamentales emitir Resoluciones Sumarias. La sección 3. 7 de este estatuto establece en su inciso (b) que:

> Si la agencia determina *a solicitud de alguna de las partes* y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias ya sean de carácter final, o parcial resolviendo cualquier controversia entre las partes, que sean separable de las controversias, excepto en aquellos casos donde la ley orgánica de la agencia disponga lo contrario.
>
> La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derechos no procede.

Asimismo, el tratadista y profesor Javier Echevarría Vargas en su texto el Derecho Administrativo Puertorriqueño reitera que las resoluciones sumarias "*solo podrán emitirse dictámenes sumarios a petición de parte* y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria, los documentos incluidos

con la moción en oposición, así como aquellos que obren en el expediente de la agencia". J. A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, 5.ª ed. rev., San Juan, Ed. SITUM, 2023, pág. 258.

### C. Enmienda a la Querella

El propósito del Reglamento de Procedimientos Adjudicativos (Departamentos de Asuntos del Consumidor), Reglamento Núm. 8034, 14 de junio de 2011, pág. 1, según su Regla 1, es "asegurar la solución justa, rápida y económica de las querellas presentadas ante o por el Departamento y proveer un procedimiento uniforme para su adjudicación". Además, en la Regla 3 se expone que este Reglamento aplicará a los procedimientos administrativos sobre querellas iniciadas por el DACo o por los consumidores. *Íd.*

La Regla 16 establece como se deben llevar a cabo las enmiendas a las Querellas. Esta regla expone que:

> *[E]l querellante podrá enmendar su querella en cualquier momento después de radicada, pero antes del término de veinte (20) días antes de la vista administrativa,* si la enmienda a la querella se presenta dentro del término de veinte (20) días antes de la vista administrativa quedará a discreción del Juez Administrativo, Oficial Examinador, Secretario de Panel de Jueces al aceptar o no la enmienda a la querella y de enmendarse la querella el Departamento notificará la querella enmendada a la parte querellada que tiene a su vez veinte (20) días para contestarla, si el querellante está representado por abogado, éste estará obligado a notificarla. La enmienda a la querella inicia nuevamente los términos para resolver la querella en el término establecido en la [Ley Núm. 38 – 2017]. (Énfasis suplido). Íd., pág. 16.

Aplicando analógicamente la jurisprudencia que ha interpretado las enmiendas a las alegaciones en nuestra Regla 13.1 de Procedimiento Civil, 32 LPRA Ap. V. En *SLG Font Bardon v. Mini – Warehouse*, 179 DPR 322, 335 (2010), se reiteró el principio de liberalidad a favor de las enmiendas. El Tribunal Supremo consignó que cuando los tribunales examinen si permitirán o no una enmienda de las alegaciones, tienen que ejercer su facultad

liberalmente. Asimismo, se reconoció que en nuestro ordenamiento jurídico existe una política judicial a favor de que los casos se resuelvan en sus méritos. *Íd.*

### D. Reconsideración

La Regla 29.1 del Reglamento de Procedimientos Adjudicativos, supra, pág. 30 establece en torno a la Reconsideración que:

> La parte adversamente afectada por una resolución u orden parcial interlocutoria o final podrá solicitar Reconsideración. La solicitud de Reconsideración deberá ser presentada en el Departamento, además de notificada a la parte contraria, dentro del término jurisdiccional de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden. El promovente de la moción de reconsideración acreditará en el Departamento evidencia de haber notificado a la parte contraria, la cual constituirá un requisito de cumplimiento estricto.

### III.

El 22 de enero de 2026, el Recurrido en su escrito titulado Moción conjunta en Oposición a Recurso de Revisión Judicial nos señala que:

> [L]a Parte Recurrente no notificó oportunamente su Moción de Reconsideración, en contravención expresa con lo dispuesto por el [Reglamento de Procedimientos Adjudicativo, *supra*], el cual exige que toda reconsideración sea no solo radicada, sino notificada a las partes adversas dentro del término de veinte (20) días. Al haberse notificado fuera del término aplicable, la reconsideración nunca fue perfeccionada válidamente, por lo que no se interrumpió el término aplicable, la reconsideración nunca fue perfeccionada válidamente, por lo que no se interrumpió el término jurisdiccional para acudir en revisión judicial, constituyendo un escollo procesal que priva a este Honorable Tribunal de jurisdicción para atender el recurso.

Como cuestión preliminar destacamos que este foro tiene jurisdicción. El 7 de noviembre de 2025, el DACo, por su propia iniciativa y sin solicitud de parte emitió una Resolución Sumaria desestimando la Querella. La parte insatisfecha con esta determinación tiene un término de veinte (20) días jurisdiccionales

según la Regla 29.1 del Reglamento de Procedimientos Adjudicativos, *supra*, pág. 30 para solicitar una Reconsideración al DACo. La Parte Recurrente presentó su Reconsideración el 1 de diciembre de 2025.[14] Por lo cual, presentó la Reconsideración a tiempo. No obstante, la notificación de la Reconsideración a la parte contraria tenía que ser enviada dentro del término de veinte (20) días. Pero, este término es uno de cumplimiento estricto. Según consta en el expediente, el 2 de diciembre de 2025, fue que se notificó a la parte Recurrida de la Reconsideración es decir un (1) día tarde.

Si bien el término establecido en la Regla 29.1 del Reglamento de Procedimientos Adjudicativos, *supra*, es uno de cumplimiento estricto y la parte no solicitó prórroga ni acreditó justa causa formal para su incumplimiento, este tribunal entiende que la aplicación rígida de los términos procesales no debe prevalecer sobre las exigencias del debido proceso de ley. Considerando que el retraso fue mínimo y que no surge perjuicio real a la parte contraria, resulta procedente ejercer la discreción judicial para atender el planteamiento en sus méritos, evitando que un tecnicismo procesal produzca un resultado potencialmente injusto.

Destacamos que la Regla 32 del Reglamento de Procedimientos Adjudicativos, *supra*, pág. 34 establece que este reglamento se interpretará "en forma *liberal* de modo que se garantice una solución rápida, *justa* y económica de todo procedimiento". (Énfasis suplido).

Atendida la controversia jurisdiccional pasemos a examinar los errores señalados. La parte Recurrente en su Recurso de

---

[14] Debido a que, el último día en el cual se podía presentar la Moción de Reconsideración era un viernes feriado entiéndase el 28 de noviembre de 2025 y los días subsiguientes era un sábado y domingo es decir las fechas del 29 y 30 de noviembre, respectivamente. El último día hábil para presentar la Reconsideración era el 1 de diciembre de 2025.

Revisión Judicial nos señala cuatro (4) errores. Por estar relacionados los errores los atenderemos conjuntamente.

La Recurrente presentó dos (2) mociones ante el DACo. La primera moción fue presentada el 18 de septiembre de 2025 que giraba en torno a poder enmendar la Querella y la segunda fue presentada el 9 de octubre de 2025, solicitando el relevo de representación legal. El DACo no contestó ninguna de las mociones antes mencionadas. Por consiguiente, violó el debido proceso de ley en su vertiente procesal a la Recurrente debido a que no la escuchó. La agencia antes de haber emitido su Resolución tenía que atender las mociones.

La Regla 16 del Reglamento del DACo establece que "*el querellante podrá enmendar su querella en cualquier momento después de radicada, pero antes del término de veinte (20) días antes de la vista administrativa".* En el caso de marras, todavía no se había señalado una vista. Por consiguiente, la parte Recurrente estaba a tiempo de realizar su enmienda a la Querella. De haber permitido la enmienda correspondiente, el DACo no tendría fundamento alguno de haber desestimado la Querella por falta de jurisdicción. No obstante, prefirió desestimar la Querella a que el caso se ventile en los méritos contra la persona jurídica correspondiente. El haber permitido la enmienda a la Querella se hubiera sustituido a Sunrun PR Operations LLC por Sunrun, Inc.

En nuestro ordenamiento jurídico existe una liberalidad a favor de que las alegaciones se enmienden ya sea en las demandas o en las querellas. Además, el Reglamento le brinda la discreción al DACo a permitir las enmiendas a la Querellas una vez se está dentro del término de veinte (20) días a acercase a la vista. Sin embargo, cuando no se ha señalado la vista *debe permitir la enmienda.* (Énfasis suplido).

Concluimos que el primer y segundo error fueron cometidos. No se entrará a la discusión del error tercero y cuarto error. Debido a que, el DACo, debe atender las mociones presentadas por la parte Recurrente. Devolvemos el caso al DACo para que cumpla con su deber de atender las querellas y emita sus determinaciones correspondientes.

**IV.**

Por los fundamentos antes expuestos, se revoca la Resolución Sumaria emitida por el DACo y ordenamos la devolución del caso a su consideración para que atienda las mociones de conformidad con lo aquí resuelto.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones